**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **DANIEL MCKEE** | **CIVIL ACTION** |
| **VERSUS** | **No.   26-109** |
| **NEIL DUPLANTIER, ET AL.** | **SECTION I** |

## ORDER AND REASONS

*Pro se* plaintiff Daniel McKee ("plaintiff") filed this lawsuit against defendants Neil Duplantier, Shibu Varughese, and West Jefferson Hospital (the "Hospital") (collectively, "defendants") for alleged injuries he suffered while under their care and as a result of being "wrongfully discharged."[1] U.S. Magistrate Judge Currault granted plaintiff's request to proceed *in forma pauperis*[2] and, pursuant to 28 U.S.C. § 1915(e)(2), screened and recommended plaintiff's complaint be dismissed without prejudice for lack of subject matter jurisdiction.[3] Plaintiff filed an objection[4] to the report and recommendation. He also, separately, filed a "consolidated motion"[5] for (1) change of venue; (2) protective order; (3) preliminary injunction; and (4) sanctions. The Court will address the objection and plaintiff's consolidated motion in turn.

---

[1] *See generally* R. Doc. No. 4.

[2] R. Doc. No. 6.

[3] *See generally* R. Doc. No. 8.

[4] R. Doc. No. 12. Plaintiff's objection to the report and recommendation was due on March 5, 2026. *See* R. Doc. No. 8. However, the Court granted plaintiff's motion for extension of time to file objections on March 6, 2026, *see* R. Doc. No. 11, and plaintiff filed his objection the same day, *see* R. Doc. No. 12. Plaintiff's objection is, therefore, timely.

[5] R. Doc. No. 9.

## I.    LAW & ANALYSIS

### a.    *Subject Matter Jurisdiction*

The report and recommendation found that the allegations in the complaint were insufficient to support either diversity jurisdiction or federal question jurisdiction.[6] With respect to the latter, the report and recommendation noted that "although Plaintiff checked the box marked 'federal question' and list[ed] 'ADA,'" in his complaint as the basis for jurisdiction, "he includes no factual allegations that implicate a claim under the Americans with Disabilities Act" ("ADA"). It noted, for example, that the complaint includes no allegations that establish that plaintiff "suffers from a medical condition that would qualify as a disability under the ADA."[7] It instead found that plaintiff's "factual allegations all appear to relate to alleged acts of malpractice in his treatment and discharge relating to hip replacement surgery," which reflect only state law claims and cannot serve as the basis for federal question jurisdiction.[8]

In his objection,[9] plaintiff submits that federal question jurisdiction exists for his claims pursuant to the ADA as well as the "Emergency Medical Treatment and Active Labor Act (EMTALA), and federal regulations governing patient rights established under the Social Security Act."[10]

---

[6] *See* R. Doc. No. 8, at 3–5.

[7] *Id.* at 5.

[8] *Id.* at 4; *id.* at 5 ("Plaintiff's allegations are more properly characterized as claims of medical malpractice, not a violation of Title III of the ADA."); *see also id.* at 4 (noting that "all specified causes of action reflect only state law claims").

[9] R. Doc. No. 12.

[10] *Id.* at 2.

EMTALA "provides patients with a private cause of action for any personal harm a patient suffers as a direct result of the hospital's EMTALA violation." *Guzman v. Mem'l Hermann Hosp. Sys.*, 409 F. App'x 769, 773 (5th Cir. 2011) (citing 42 U.S.C. § 1395dd(d)(2)(A)). "The act requires that participating hospitals give the following care to an individual who is presented for emergency medical care: (1) an appropriate medical screening; (2) stabilization of a known emergency medical condition; and (3) restrictions on transfer of an unstabilized individual to another medical facility." *Id.* The term "transfer" means "the movement (including the discharge) of an individual outside a hospital's facilities at the direction of any person employed by (or affiliated or associated, directly or indirectly, with) the hospital." 42 U.S.C. § 1395dd(e)(4). "Congress enacted EMTALA to prevent 'patient dumping,' which is the practice of refusing to treat patients who are unable to pay." *Id.* at 772 (internal quotations omitted).

EMTALA "is not a general federal malpractice statute." *Hao Liu v. Plano Med. Ctr.,* 328 F. App'x 904, 905 (5th Cir. 2009). A plaintiff's complaint alleging malpractice and not allegations that "fall within the scope of § 1395dd," may be properly dismissed for lack of subject matter jurisdiction. *See id.* (finding that the district court did not err by dismissing the plaintiff's negligence claim, brought pursuant to EMTALA, for lack of subject-matter jurisdiction). Whether the Court has subject matter over plaintiff's claims pursuant to EMTALA, therefore, depends on whether "the complaint pled facts that support the EMTALA claims." *Gardner v. Huott*, No. 13-840, 2013 WL 12130310, at *2 (W.D. Tex. Dec. 13, 2013). The "claim need only be

'colorable' to invoke federal question jurisdiction.'" *WickFire, L.L.C. v. Woodruff*, 989 F.3d 343, 352 (5th Cir. 2021).

It appears to the Court, at this stage,[11] that plaintiff's allegations support a colorable EMTALA claim.[12] Notably, plaintiff alleges that he "presented to the Hospital with acute medical needs," and he alleges that after an examination, it was determined that his "condition required significant medical intervention and post-

---

[11] In determining whether subject matter jurisdiction exists, this Court follows "the general rule that courts should avoid merits analyses in determining jurisdiction." *In re KSRP, Ltd.*, 809 F.3d 263, 267 (5th Cir. 2015); *see also id.* ("[C]ourts should analyze their own authority to hear a case as a separate matter from whether that case involves a viable claim."). Although "a claim that invokes federal jurisdiction may nonetheless be 'dismissed for want of subject-matter jurisdiction if it is not colorable, i.e., if it is immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous,'" *id.* (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 n. 10 (2006)), the Court does not find that plaintiff's claims are made solely for the purpose of obtaining jurisdiction or wholly insubstantial and frivolous. Nevertheless, the Court will entertain any challenges defendants may have to jurisdiction or viability of plaintiff's claims once they have been served and should they wish to raise such challenges in their responsive pleadings.

[12] The Court recognizes that the report and recommendation analyzed only whether plaintiff's claims support an ADA claim because that was the only federal statute listed in plaintiff's complaint and the Magistrate Judge did not have the benefit of knowing that plaintiff was asserting an EMTALA claim. *See* R. Doc. No. 8, at 4–5. However, because "*pro se* complaint[s] should be construed liberally," and because plaintiff's allegations raise a colorable claim under federal law, the Court declines to dismiss the complaint at this time and will allow plaintiff an opportunity to amend his complaint to add his EMTALA claim. *See Randall v. Reeves*, 189 F.3d 466, 4661999 WL 511391, at *1 (5th Cir. 1999) (finding that the magistrate judge erred by dismissing the pro se plaintiff's claims for reasons related to the specific statute cited by the plaintiff, rather than whether the complaint alleged a cause of action); *cf. Jackson v. Dep't of Veteran's Affs.*, No. 22-016, 2022 WL 18814745, at *3 (N.D. Tex. Dec. 14, 2022), *report and recommendation adopted*, No. 22-016, 2023 WL 2144158 (N.D. Tex. Feb. 21, 2023) (finding that although the *pro se* plaintiff had "not sought leave to do so, he should be provided an opportunity to amend his Complaint to correct the deficiency" and name the correct defendant).

discharge care."[13] Hospital medical providers determined that he was "unable to care for himself" and that he should "be transferred directly from the Hospital to a skilled nursing home facility upon discharge."[14] Yet, at some point thereafter, Hospital staff "demanded that Plaintiff leave the premises immediately," prior to receiving the advised medical care.[15] Plaintiff alleges that, due to his homeless status, he was "discharged . . . directly out onto the street with no housing, no follow-up care, and no resources to manage his severe medical conditions."[16]

Although the Court takes no position as to the ultimate viability of plaintiff's EMTALA claim,[17] the Court finds plaintiff's allegations, particularly considering his *pro se* status,[18] are sufficient at this stage to support a finding that federal question jurisdiction exists.

### b.    Plaintiff's consolidated motion

The Court, however, denies the requests in plaintiff's consolidated motion. First, Magistrate Judge Currault ordered the Clerk of Court to withhold issuance of summons pending completion of her review of plaintiff's complaint.[19] Accordingly, no summons have been issued and defendants have not yet been served in this matter. Additionally, plaintiff has not made any assertion that defendants have been given

---

[13] R. Doc. No. 4 ¶¶ 18–19.

[14] *Id.* ¶ 21.

[15] *Id.* ¶¶ 23–27.

[16] *Id.* ¶ 28.

[17] *See supra* n. 11.

[18] *See Randall*, 189 F.3d 466, 4661999 WL 511391, at *1.

[19] *See* R. Doc. No. 6, at 3.

notice of this lawsuit.[20] As such, the Court finds that plaintiff's motion for a preliminary injunction is premature. *See Buckler v. Austin*, No. 22-368, 2023 WL 2557360, at *1 (W.D. Tex. Jan. 20, 2023) (declining to issue a preliminary injunction where "the docket contain[ed] no indication that [the] [p]laintiff ha[d] served any of the [d]efendants with process" and there was no evidence that the defendants were "aware" of the plaintiff's preliminary injunction motion); FED. R. CIV. P. 65(a)(1) ("The court may issue a preliminary injunction only on notice to the adverse party.").

Likewise, with respect to plaintiff's request for a protective order, the motion does not certify that plaintiff has "in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action," as is required by Federal Rule of Civil Procedure 26(c). *See* FED. R. CIV. P. 26(c)(1). The Court will therefore, at this time, deny without prejudice plaintiff's motion for a protective order. *See Hardy v. Scandinavian Airlines Sys.*, No. 21-1591, 2025 WL 416106, at *7 (E.D. La. Feb. 6, 2025) (Currault, M. J.) ("Failure to confer generally serves as a basis for denying a discovery motion.").[21]

The Court also denies plaintiff's request to transfer to the Middle District of Louisiana pursuant to 28 U.S.C. § 1404(a).[22] First, plaintiff has failed to satisfy the

---

[20] *See generally* R. Doc. Nos. 4, 8, 9.

[21] In so deciding, the Court does not suggest that a protective order is appropriate in this case. *Cf. Hardy*, 2025 WL 416106, at *7 ("[T]he privilege protecting medical records from discovery is waived when the party places her medical condition at issue."). Particularly because the Court questions whether Rule 26(c)—which pertains to discovery-related protective orders—is an appropriate vehicle for the "protective housing" that plaintiff seeks. *See* R. Doc. No. 9, at 4.

[22] *See* R. Doc. No. 9, at 3.

"preliminary question under § 1404(a)," which is whether venue is proper in the Middle District of Louisiana. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue."). None of the defendants reside in the Middle District of Louisiana,[23] *see* 28 U.S.C. § 1391(b)(1), and the only "events" plaintiff points to as occurring in the Middle District of Louisiana are "the critical examination and the creation of essential expert evidence,"[24] *see* § 1391(b)(2). Importantly, it does not appear that these are the events "giving rise to his claims." *See id.* Plaintiff's claims arise out of his treatment at, and allegedly improper discharge from, the Hospital in Marrero, Louisiana, which is encompassed by this judicial district.[25]

Moreover, even if the Court were to find that this case "might have been brought" in the Middle District of Louisiana, § 1404(a), plaintiff has not met his burden of showing "'good cause' for a transfer by 'clearly demonstrating that a transfer is for the convenience of parties and witnesses, in the interest of justice.'" *Gonzalez v. Sea Fox Boat Co., Inc.*, No. 18-7711, 2019 WL 414665, at *2 (E.D. La. Feb. 1, 2019) (Africk, J.) (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d at 315) (internal alterations omitted). Although two of the factors the Court would consider are "the relative ease of access to sources of proof" and "the cost of attendance for willing

---

[23] *See* R. Doc. No. 4, at 2 (alleging that all defendants reside in Marrero, Louisiana).
[24] R. Doc. No. 9, at 3.
[25] UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF LOUISIANA, *Parish Information*, https://www.laed.uscourts.gov/court-information/parish-info (last visited Mar. 11, 2026).

witnesses," *see id.*, plaintiff's motion to transfer is based solely on the fact that a single non-party witness—the unnamed "medical examiner"—resides in Baton Rouge and would have to "travel [and] transport[] necessary records and evidence from Baton Rouge."[26] Furthermore, while a "plaintiff's choice of forum is clearly a factor to be considered" it is not "in and of itself . . . conclusive nor determinative." *In re Horseshoe Ent.*, 337 F.3d 429, 434 (5th Cir. 2003). For these reasons, and in exercising its "broad discretion in deciding whether to order a transfer," the Court finds plaintiff has not met his burden of showing "good cause" and declines to transfer the above-captioned case. *Id.* (quoting *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998)).

Finally, plaintiff's Rule 11 motion for sanctions does not assert that any sanctionable conduct has occurred.[27] Instead, plaintiff states that the Court "should impose sanctions" if any party "interferes with this litigation."[28] Plaintiff seeks an order from this Court "warning" the parties that improper actions are sanctionable.[29] Plaintiff's motion is both procedurally improper pursuant to Rule 11,[30] and premature.

---

[26] R. Doc. No. 9, at 3.

[27] *See generally id.*

[28] *Id.* at 5.

[29] *Id.* at 6.

[30] *See* FED. R. CIV. P. 11(c)(1) (stating that "the court may impose an appropriate sanction" only after the party against who sanctions are sought is given "notice and a reasonable opportunity to respond"); *see also* FED. R. CIV. P. 11(c)(2) ("A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b).").

## II.    CONCLUSION

Accordingly,

**IT IS ORDERED** that the Court **DECLINES TO ADOPT** the report and recommendation.[31]

**IT IS FURTHER ORDERED** that plaintiff is **GRANTED LEAVE TO AMEND** his complaint by **MARCH 27, 2026,** to add his EMTALA claim. Failure to file an amended complaint may result in dismissal of plaintiff's lawsuit.

**IT IS FURTHER ORDERED** that plaintiff's consolidated motion[32] is **DENIED**.

New Orleans, Louisiana, March 16, 2026.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[31] R. Doc. No. 8.
[32] R. Doc. No. 9.

9